FILED
2017 Mar-31  PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOYCE WATKINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **v.** | ) | _____ |
| | ) | |
| **TEKLINKS, INC. and** | ) | **PLAINTIFF DEMANDS** |
| **DONNY MCCARTY** | ) | **TRIAL BY STRUCK JURY** |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

## JURISDICTION AND VENUE

1.     This Complaint seeks legal and equitable relief to redress Defendants'

violations of Plaintiff Joyce Watkins' rights secured by the following:

      a.     The Age Discrimination in Employment Act of 1967

           ("ADEA"), 29 U.S.C. §§ 621-634, as amended;

      b.     The Alabama Age Discrimination in Employment Act

           ("AADEA"), Ala. Code  1975, § 25-1-20, *et seq*.; and

      c.     The laws of the State of Alabama.

2.     Federal subject matter jurisdiction exists pursuant to:

      a.     28 U.S.C. §§ 1331, 1343(a)(3) and 1367; and

      b.     The ADEA, 29 U.S.C. § 626(c)(1).

## PARTIES

3.      Plaintiff Joyce Watkins (hereinafter "Watkins") is an individual over the age of forty (40).  Watkins is a resident of Leeds, Alabama in Jefferson County and was employed by TekLinks, Inc. in Birmingham, Alabama.

4.      Defendant TekLinks, Inc. (hereinafter "Defendant" or "TekLinks") is an information technology and networking consulting company with offices operating in four (4) states.  TekLinks currently employs more than 300 people in its offices and corporate headquarters.  TekLinks is incorporated in the State of Alabama and headquartered in Birmingham, Alabama.

5.      At all times relevant to this Complaint, TekLinks was conducting business in Jefferson County, Alabama.

6.      Defendant employs at least twenty (20) persons within the meaning of the ADEA, 29 U.S.C. § 630(b).

7.      Defendant is an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1).

8.      Defendant Donny McCarty ("McCarty") is over the age of nineteen and at all times relevant to this Complaint, a resident of Jefferson County, Alabama, and is subject to the jurisdiction of this Court.

## ADMINISTRATIVE PROCEDURES

9.      On December 8, 2016, within 180 days of learning of the acts of

discrimination of which she complains, Watkins filed a Charge of Discrimination with the Equal Employment Opportunity Commission, ("EEOC") alleging age discrimination, harassment, and retaliation. **(Attached herein as Exhibit A.)**

10.    Watkins has exhausted all conditions precedent to bringing suit under the ADEA, to wit:

a.    Watkins' charge has been pending with the EEOC for over sixty (60) days.  29 U.S.C. § 626(d)(1).

## STATEMENT OF FACTS

11.    Joyce Watkins is 67 years old.

12.    Watkins was employed by Defendant for over twelve (12) years.

13.    Watkins began as a Senior Voice Consultant and ultimately held the position of Provisioning Manager at Defendant's Birmingham, Alabama location.

14.    Watkins worked with the original owner of the company, Stuart Raburn, when the company initially formed.  Watkins helped Raburn grow the start-up company.

15.    Defendant never gave Watkins a job description; Watkins always adapted to any role or position in which the organization placed her.

16.    Watkins went above and beyond what was required and expected with regard to her job performance.

17.    Watkins consistently received above-average performance reviews.

18.    In 2015, Watkins received the company's Outstanding Service Award.

19.    Watkins was a salaried employee and classified as exempt from overtime.

20.    Watkins routinely worked between 50-60 hours a week, depending on workload.

21.    Watkins was the oldest person employed by Defendant.

22.    Watkins' supervisor at all times relevant to this Complaint was Donny McCarty (40's).

23.    In October 2015, McCarty asked Watkins if she was ready to retire.

24.    Watkins was shocked and taken aback by McCarty's question.

25.    Watkins told McCarty that she was not ready to retire and that she needed to work until she was at least 70.

26.    Sales had increased in Watkins' department to the point that Watkins was being inundated with work.

27.    Watkins complained about the increased workload to McCarty.

28.    McCarty acknowledged that Watkins had too much work and ordered her to request assistance from Krista Stull (30's), her co-worker, when needed.

29.    Because Watkins was constantly overloaded, having to frequently request help from her younger coworker was humiliating and demeaning.

4

30.     Ms. Stull was not always available to assist Watkins.

31.     When Ms. Stull did assist, it would often be on one small aspect of a much larger project, leaving the brunt of the workload on Watkins' shoulders.

32.     At some point thereafter, Watkins, Stull, and McCarty held a meeting in which an agreement was made to realign duties within the department to alleviate some of Watkins' workload.

33.     Watkins agreed to take on service tickets, and Stull agreed to take on projects.

34.     McCarty acknowledged the realignment as a viable solution during the meeting; however, McCarty never reassigned Stull's accounting duties to enable the agreed-upon realignment to occur.

35.     McCarty failed to implement any solution to alleviate Watkins' workload.

36.     McCarty ordered Watkins to train her younger coworkers on performing her job functions, yet did not require the coworkers to train Watkins on theirs, despite Defendant's promotion of cross training within the organization.

37.     McCarty selected Stull as Team Leader of their department.

38.     Watkins was never informed of the position or told that she could apply.

39.     Watkins had years of managerial experience, whereas Stull had none.

40.     Watkins asked McCarty why she was not considered, to which McCarty replied, "You have too much work as it is, and I need someone who is not planning on retiring so soon."

41.     Watkins did not receive a raise for approximately six (6) years. Watkins complained, and she finally received a modest increase the year before Defendants terminated her employment.

42.      Watkins' coworkers began to ostracize her in order to gain favor with McCarty.

43.     Watkins' work environment was permeated with age-related comments.

44.     Watkins routinely heard slurs from coworkers, supervisors, and upper management including, but not limited to, the following:

     a.     "When are you going to retire?" (McCarty – several occasions)

     b.     "I'm going to lose all my staff within two (2) years" incorrectly assuming that Watkins was about to retire.  (McCarty)

     c.     "I hope to God I'm not working when I'm as old as you." (Jonathan Atkins)

     d.     Continually referred to as "Maw Maw" (Mark Fisher, Jeremy Sanders, and Daniel Johnson) and "Ma'am" (McCarty)

     e.     "What perfume are you wearing, Eau de Old Lady?"  (Jeremy

Sanders)

f.   "I know that's how you did it back in the day when you were doing it, but that's not how we do it today."  (Chris Hoscheid, Vice President)

g.   "We don't use phone systems with cords anymore."  (Jeremy Sanders)

h.   She and another older female worker were referred to as the "geriatric group." (Chris Hoscheid).

45.   Watkins complained to Laurie Halvorson, Vice President of Human Resources, about age discrimination and her hostile work environment.

46.   Watkins forwarded Halverson additional documentation of discrimination and harassment by McCarty.

47.   Halvorson failed to investigate Watkins' complaint.

48.   Instead, Halvorson immediately dismissed Watkins' complaint, stating that she did not believe it was age discrimination.

49.   On August 26, 2016—after Watkins complained—McCarty placed her on a 60-day performance improvement plan ("PIP").

50.   Watkins asked Chris Hoscheid, Vice President, the purpose of the PIP.

51.   Hoscheid replied that it was "just a formality."

52.   Watkins asked Halvorson, Director of HR, what happened at the end of the sixty (60) days.

53.   Halvorson told Watkins, "It just goes away."

54.   Defendants never informed Watkins that her job was on the line.

55.   McCarty ordered Watkins to begin keeping a time sheet.

56.   This was unnecessary and demeaning because McCarty could easily view Watkins' time and projects that she was working on in TekLinks' master records.

57.   Watkins nonetheless complied.

58.   McCarty did not order Ms. Stull or Robbie Sims, Watkins' other younger coworker, to keep timesheets.

59.   McCarty also ordered Watkins to get all time off pre-approved.

60.   McCarty chastised Watkins for taking an extended lunch one day to see her grandchild in a school play, despite the fact that Watkins was consistently working 50 to 60 hours per week.

61.   Taking occasional personal time off had never been an issue for anyone due to the long hours worked.

62.    McCarty did not scrutinize Watkins' younger coworkers' time as he did Watkins'.

63.    McCarty advised Watkins that they would meet on a weekly basis to discuss her performance under the PIP.  Those meetings never occurred.

64.    On October 20, 2016, before Watkins could finish the PIP, Defendant

terminated her employment.

65.    Defendant told Watkins she was being terminated for making an error in an assignment approximately a month prior.

66.    Defendant also falsely accused her of trying to cover it up.

67.    Watkins never even considered "covering up" the error, because it had happened before through basic human error (both hers and others') and had never been a terminable offense.

68.    Defendant never gave Watkins any disciplinary action prior to terminating her employment.

69.    Defendant replaced Watkins with Stull (30's), whom Watkins had trained to perform her duties.

70.    Defendant has subjected other women over the age of forty (40) to discriminatory and adverse treatment.  Defendant recently terminated Carla Nabors (age 48), Janet Woods (over 50), and Shirley Catlin (over 50).  Linda Lopez (over 50) resigned in or around 2015 due to management's adverse treatment.  Defendant demoted Judy Thibodaux (over 50), Chief Financial Officer, to the Sales Support Team and then subsequently terminated her employment.

71.    Younger employees have been given legitimate PIP plans advising them that failure to improve could warrant termination and detailing steps to improve and successfully complete the PIP.

72.   Younger employees have been given repeated chances after committing serious policy violations without being placed on a PIP or being terminated.

73.   Younger employees have committed the same or worse violations as Watkins' alleged violation and have not been terminated.

## COUNT ONE

### AGE DISCRIMINATION,
### HARASSMENT, AND RETALIATION
### AGAINST DEFENDANT TEKLINKS, INC.

74.   Watkins adopts and realleges paragraphs 1-73 as if fully recited herein.

75.   This Count addresses those claims seeking to redress the unlawful employment practices of age discrimination, harassment, and retaliation conducted by Defendant's agents and employees and ratified by the Defendant, and protected by federal and state law that prohibits age discrimination.

76.   This is an action to redress grievances resulting from the acts of Defendant, its agents, servants, and employees committed with respect to Watkins' employment and for a permanent injunction restraining Defendant from maintaining a policy and practice of harassing, discriminating, and retaliating against Watkins and other persons similarly situated on account of age.

77.   Watkins is 67 years of age and a member of a protected group.

78.    Watkins is qualified to perform the job duties of a Senior Voice Consultant and Provisioning Manager and has conducted duties consistent with these positions in a satisfactory manner for over twelve (12) years.

79.    Watkins was subjected to discriminatory treatment, slurs, and harassment based on age by Defendant.

80.    When Watkins complained, Defendant failed to investigate or remedy her complaints.

81.    Defendant instead subjected her to a retaliatory hostile work environment, culminating in her termination on October 20, 2016.

82.    Younger employees with less experience and seniority were not treated in the same discriminatory or hostile manner and were treated more favorably than Watkins with respect to the terms, conditions, and pay in their employment.

83.    As a proximate result of Defendant's unlawful intentional discrimination, harassment and retaliation, Watkins suffered different terms and conditions of employment than her younger co-workers.

84.    Such unlawful employment practices proximately caused Watkins to suffer severe emotional distress, physical injury and pain, mental anguish, embarrassment, humiliation, shame, trauma, financial duress, wage and benefit loss, and financial loss for which she claims damages.

85.    Watkins seeks declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, interest, liquidated damages, costs, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT TWO

### NEGLIGENT AND WANTON HIRING, TRAINING, SUPERVISION AND RETENTION AGAINST DEFENDANT TEKLINKS, INC.

86.    Watkins adopts and realleges paragraphs 1-8, 11-73 as if fully recited herein.

87.    This is a claim arising under the laws of the State of Alabama to redress the negligent and wanton hiring, training, supervision and retention of Defendant's employees.

88.    Defendant TekLinks had a duty to provide a reasonably safe, non-hostile, non-discriminatory, and non-retaliatory work environment to Watkins and other employees over the age of forty (40).

89.    Defendant had actual notice of the actions complained of by Watkins.

90.    Defendant, having such knowledge, negligently and wantonly failed to train and discipline those employees who actively discriminated, harassed, retaliated, and conspired against Watkins on an ongoing basis, and failed to protect Watkins from further injury.

91.    Defendant failed to administer and adequately communicate its own

policies against discrimination, harassment, and retaliation to its agents and employees.

92.   Such conduct created a hostile work environment for Watkins.

93.   Watkins' working conditions were adverse and hostile and intended to cause her financial, physical, and emotional harm.

94.   As a proximate result of the Defendant's unlawful conduct, Watkins suffered different terms and conditions of employment than other employees, severe emotional distress, physical injury, pain and suffering, humiliation, mental anguish, trauma and embarrassment, and financial loss.

95.   Watkins seeks declaratory and injunctive relief; reinstatement; award of lost wages; back pay; front pay; interest; compensatory and punitive damages for embarrassment, humiliation, and mental anguish; costs; attorneys' fees; and any and all such other relief the trier of fact may assess.

## COUNT THREE

### INTERFERENCE WITH CONTRACTUAL OR BUSINESS RELATIONS AGAINST BOTH DEFENDANTS

96.   Watkins adopts and realleges paragraphs 1-8, 11-73 as if fully recited herein.

97.   There existed a business relationship between Watkins, her coworkers, colleagues, other managers, and her customers.

13

98.    Defendants TekLinks and McCarty had knowledge of the business relationship between Watkins and others and sought to intentionally damage and harm that relationship to Watkins' detriment.

99.    Defendants intentionally sought to harm Watkins to her financial, physical, and emotional detriment.

100.    Defendants intentionally interfered with the business relation that Watkins had because she complained about Defendants' discrimination and harassment of her.

101.    Defendants advised Watkins' coworkers and colleagues to avoid any contact with Watkins whatsoever.

102.    Watkins was damaged as a result of Defendants' intentional interference and intent to defame and harass.

103.    As a proximate result of the Defendants' conduct, Watkins was caused to suffer loss of pay, benefits, physical injury and pain and suffering, embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages as set out below.

104.    Watkins seeks declaratory and injunctive relief, reinstatement, award of compensatory and punitive damages, mental anguish, costs, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT FOUR

### LIBEL AND SLANDER
### AGAINST BOTH DEFENDANTS

105.   Watkins adopts and realleges paragraphs 1-8, 11-73 as if fully recited herein.

106.   This is a claim arising under the laws of the State of Alabama prohibiting defamation and specifically libel and slander against Defendants.

107.   Watkins was subjected to negative verbal and written publicity based on Defendants' intentional actions, words, and false accusations that were intended to harm Watkins.

108.   Defendants falsely accused Watkins of unacceptable performance deficiencies and dishonesty and relayed those comments to other individuals within Watkins' community.

109.   Such unlawful actions proximately caused Watkins to suffer severe emotional distress, physical injury, mental anguish, trauma and embarrassment, and financial loss.

110.   Watkins seeks declaratory and injunctive relief; reinstatement; award of lost wages; back pay; front pay; interest; compensatory and punitive damages for embarrassment, humiliation, and mental anguish; costs; attorneys' fees; and any and all such other relief the trier of fact may assess.

## COUNT FIVE

## DEFAMATION
## AGAINST BOTH DEFENDANTS

111.   Watkins adopts and realleges paragraphs 1-8, 11-73 as if fully recited herein.

112.   This is a claim arising under the laws of the State of Alabama prohibiting defamation.

113.   Defendants falsely accused Watkins of unacceptable performance deficiencies and dishonesty and relayed those comments to other individuals within Watkins' community.

114.   Watkins was subjected to negative publicity with her peers because of Defendants' false and intentional accusations.

115.   Defendants intended to cause Watkins harm with their acts of defamation.

116.   Such unlawful actions proximately caused Watkins to suffer severe emotional distress, physical injury, mental anguish, trauma and embarrassment, and financial loss.

117.   Watkins' reputation was tarnished among her peers and colleagues as a result of Defendants' acts of defamation.

118.   Watkins seeks declaratory and injunctive relief; reinstatement; award of lost wages; back pay; front pay; interest; compensatory and punitive damages

16

for embarrassment, humiliation, and mental anguish; costs; attorneys' fees; and any and all such other relief the trier of fact may assess.

## COUNT SIX

### INVASION OF PRIVACY
### AGAINST BOTH DEFENDANTS

119.   Watkins adopts and realleges paragraphs 1-8, 11-73 as if fully recited herein.

120.   This is a claim against Defendants TekLinks and McCarty for the invasion of Watkins' right to privacy based on the laws of the State of Alabama.

121.   Defendants invaded Watkins' personal and emotional sanctum by harassing, discriminating, and retaliating against Watkins; falsely accusing her of performance deficiencies and dishonesty; and placing her in a false and unfavorable light.

122.   Defendants, through their acts and by having Watkins defend herself against their false accusations, intruded into Watkins' physical and mental solitude and seclusion.

123.   Defendants' conduct proximately caused Watkins to suffer embarrassment, humiliation, physical injury and pain and suffering, loss of reputation, emotional distress, trauma, loss of pay and benefits, and mental anguish for which she claims damages as set out below.

124.   Watkins seeks declaratory and injunctive relief, reinstatement, award

17

of compensatory and punitive damages, mental anguish, costs, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT SEVEN

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST BOTH DEFENDANTS

125.   Watkins adopts and realleges paragraphs 1-8, 11-73 as if fully recited herein.

126.   This is a claim against all Defendants arising under the laws of the State of Alabama prohibiting the intentional infliction of emotional distress.

127.   The conduct of Defendants referenced herein was extreme, outrageous, and beyond the bounds of decency.

128.   Such conduct is not condoned by society and should not go unpunished.

129.   The conduct of Defendants consisted of intentional acts which were employed to inflict severe emotional distress upon Watkins.

130.   The repeated discriminatory remarks of Defendants' agents, including McCarty and other members of management, and their targeting of Watkins due to her age and protected activity, caused her to suffer adverse terms and conditions of employment and harmed her reputation.

131.   Defendants' conduct proximately caused Watkins to suffer embarrassment, physical injury, pain and suffering, loss of pay and benefits,

financial distress, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages as set forth below.

132. Watkins seeks declaratory and injunctive relief, and award of compensatory and punitive damages, mental anguish, costs, attorneys' fees, and any and all such other relief the trier of fact may assess.

**WHEREFORE**, Watkins respectfully requests this Court:

A.    Grant a permanent injunction enjoining Defendants, their officers, successors, assigns and all persons in active concert or participation with them, from engaging further in discriminatory treatment on the basis of age and protected activity;

B.    Order Defendant to institute and carry out policies, practices and programs which provide equal provisions and employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices, including implementing a policy against age discrimination in the work place and against retaliation for engaging in protected activities;

C.    Order Defendant to make Watkins whole by providing appropriate front pay, back pay, and prejudgment interest, in amounts to be proved at trial, reinstatement, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, compensatory damages, punitive damages, and liquidated damages;

D.      Award Watkins compensatory, punitive and liquidated damages;

E.      Award Watkins costs and expenses, including reasonable attorneys'
fees; and

F.      Award such other and further relief this Court deems necessary and
proper.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

Respectfully submitted,

/s/ Alicia K. Haynes
Alicia K. Haynes (ASB-8237-E23A)

/s/ Sonya C. Edwards
Sonya C. Edwards (ASB-8848-S73E)

**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama  35226
Phone:  (205) 879-0377
Fax:  (205) 879-3572
E-mail:  akhaynes@haynes-haynes.com
E-mail:  scedwards@haynes-haynes.com

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL:**

**REGISTERED AGENT ADDRESS:**

TekLinks, Inc.
National Corporate Research LTD, Inc.
2094 Myrtlewood Drive
Montgomery, Alabama 36111

Donny McCarty
2119 Lakeview Trace
Trussville Alabama 35173-3829

**PLAINTIFF'S ADDRESS:**

Ms. Joyce Watkins
c/o Alicia K. Haynes and Sonya C. Edwards
Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, Alabama  35226